**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

**CIVIL CASE NO. 14-81-WOB-CJS**

**ERICA PAIGE GALLION**                                                        **PLAINTIFF**


**v.**                          **REPORT AND RECOMMENDATION**


**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security**                                         **DEFENDANT**


\* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff Erica Paige Gallion brings this action under 42 U.S.C. § 405(g) challenging Defendant Commissioner's final decision denying her application for benefits under Title II and Title XVI of the Social Security Act. This matter has been referred to the undersigned for preparation of a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). At issue is whether the Administrative Law Judge erred in finding Plaintiff "not disabled" and therefore not entitled to benefits. After a thorough review of the administrative record, for the reasons explained below it will be **recommended** that Plaintiff's Motion for Summary Judgment (R. 11) be **denied**, and the Commissioner's Motion for Summary Judgment (R. 12) be **granted.**

**I.      STANDARD OF REVIEW AND THE ADMINISTRATIVE PROCESS**

In reviewing the decision of an ALJ in social security cases, the only issues before the reviewing court are whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Blakley*, 581 F.3d at 406. "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Id*. (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Thus, even if the evidence could also support another conclusion, the decision of an ALJ must stand if the evidence could reasonably support the conclusion reached. *Id*. (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

In this case, Plaintiff must establish that she is disabled within the meaning of the Social Security Act in order to qualify for benefits. 42 U.S.C. § 423(a)(1). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Act requires the Commissioner to follow a five-step analysis when making a determination on a claim of disability. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (*citing Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). First, a claimant must demonstrate that she is not currently engaged in "substantial gainful activity." *Vance*, 260 F. App'x at 803 (*citing* 20 C.F.R. §§ 404.1520(b), 416.920(b)). Second, if the claimant is not engaged in substantial gainful activity, she must demonstrate that she suffers from a severe impairment. *Id*. at 803-04. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work

2

activities.'" *Id.* at 804 (*citing* 20 C.F.R. §§ 404.1520(c), 416.920(c)).  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment located at 20 C.F.R. part 404, subpart P, appendix 1, then the claimant is presumed disabled regardless of age, education or work experience.  *Id.*  (*citing* 20 C.F.R. §§ 404.1520(d), 416.920(d)).  Fourth, the claimant is not disabled if her impairment(s) does not prevent her from doing her past relevant work.  *Id.*  Lastly, even if the claimant cannot perform her past relevant work, she is not disabled if she can perform other work that exists in the national economy.  *Id.* (*citing Abbott*, 905 F.2d at 923).  Throughout this process, the claimant carries the overall burden of establishing that she is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy.  *Id.*  (*quoting Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was fifty years old at the time of the ALJ's decision, and has a high school education.  (Administrative Record (A.R.) 43).  She has previous work experience as a union journeyman, performing work as a boilermaker and asbestos abatement worker.  (*Id.* at 43, 63).  In April 2009 Plaintiff had a heart attack, which required a stent, and requires her to take a baby aspirin every day.  (*Id.* at 20, 56, 350, 384).  Plaintiff testified that she has no heart related problems at this time, but fears another heart attack.  (*Id.* at 46-51, 56).  Plaintiff testified to having anxiety and depression for many years, but claims the 2009 heart attack has caused her anxiety to greatly increase.  Plaintiff claims disability based on a history of coronary artery disease; pain in her left

knee, ankles, and right shoulder; and anxiety, including fears of imminent death, and depression. (*Id.* at 46-58).

On April 17, 2012, Plaintiff filed applications for disability insurance benefits and supplemental security income. (*Id.* at 206-15). These claims were denied initially, and again on reconsideration. (*Id.* at 69-83, 84-98, 101-16, 117-33). Upon Plaintiff's request, a hearing was held before an Administrative Law Judge (ALJ) on September 16, 2013. (*Id.* at 41-66). At the hearing, the ALJ heard testimony from the Plaintiff and an impartial vocational expert (VE). (*Id.*). After receiving testimony, the ALJ left the record open and ordered an additional consultative-psychological examination. (*Id.* at 59-61, 66). After obtaining the October 12, 2013, report of Dr. Green, and upon further review of the record, the ALJ issued a written decision on November 14, 2013, finding Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 15-31). On May 1, 2014, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1-3).

The ALJ used the five-step sequential process to determine that Plaintiff was not disabled. (*Id.* at 15-31). *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful employment since April 8, 2009, the alleged date of disability.[1] (A.R. 17). At step two, the ALJ determined that Plaintiff had the following severe impairments: "coronary artery disease (CAD); degenerative joint and disc disease; pain disorder; anxiety and depression." (*Id.*) (*citing* 20 C.F.R. §§ 404.1520(c) and 416.920(c)).

At step three, the ALJ analyzed Plaintiff's impairments individually and in combination, and found Plaintiff did not have an impairment that meets or equals the level of severity set forth in any

---

[1]The ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013. (A.R. 17).

of the Listing of Impairments under the applicable Federal Regulation, and specifically considered

Listings 1.00, 1.02, 4.00, 12.04, 12.06, and 12.08.  (*Id.* at 18).  At step four, the ALJ determined that

Plaintiff had the residual functional capacity (RFC) to perform light work, as defined in 20 C.F.R.

§§ 404.1567(b) and 416.967(b), with the following limitations:

> [Plaintiff] is limited [in] pushing and pulling with the right upper extremity and left lower extremity to frequently; can occasionally climb ramps or stairs but never ladders, ropes or scaffolds; she can occasionally stoop, kneel, crouch, and crawl; limited to frequently reaching overhead with the right arm; she should avoid concentrated exposure to temperature extremes, humidity, vibration and hazards; she can understand and remember simple and some detailed instructions and procedures; can sustain attention, concentration and pace for simple task completion within regular tolerances including for two-hour blocks of time; can interact adequately with peers and supervisors for task completion and on an at least occasional basis with the public; and she can adapt adequately to work demands and situational changes given reasonable support.

(*Id.* at 20).

Based on this RFC, the ALJ found claimant could not perform her past relevant work as a

union journeyman, boilermaker, and asbestos abatement worker which are performed at a very heavy

level of exertion.  (*Id.* at 29-30).  At step five, the ALJ heard testimony from the VE and adopted her

opinion that given an individual of Plaintiff's age, education, work experience and RFC recited

above, there are jobs that exist in significant numbers in the national economy that such a person can

perform, including representative occupations of unskilled clerical work and product packager at the

light level and of unskilled clerical work and machine monitor at the sedentary level.  (*Id.* at 63-65).

Accordingly, the ALJ determined that Plaintiff was not "disabled" for social security purposes.  (*Id.*

at 31).

On November 22, 2013, Plaintiff appealed the ALJ's decision to the Appeals Council.  (*Id.*

at 7-11).  On May 1, 2014, the Appeals Council denied Plaintiff's request for review, rendering the

ALJ's November 14, 2013, decision denying Plaintiff benefits the final decision of the Commissioner.  (*Id.* at 1-3).  On May 27, 2014, having duly exhausted her administrative remedies, Plaintiff timely filed a Complaint asserting that the ALJ erred as a matter of law in failing to find Plaintiff disabled.  (R. 1).

Plaintiff and the Commissioner have filed Motions for Summary Judgment.  (R. 11, 12).  Plaintiff's Motion presents five issues for review, but all relate to whether the ALJ properly weighed the opinion evidence.  (R. 11-1, at 1-2).

## III.   ANALYSIS

Plaintiff argues the ALJ erred in her determination of the weight to accord opinion evidence.  As discussed below, the ALJ's decision is supported by substantial evidence.

### A.    Treating Physician's Opinion

"Generally, the opinions of treating physicians are given substantial, if not controlling, deference."  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (*citing* 20 C.F.R. § 404.1527(d)(2)).  However, treating physicians' opinions do not automatically bind the ALJ:  these opinions are only entitled to controlling weight when they are supported by objective medical evidence and consistent with other substantial evidence in the record, *Wilson*, 378 F.3d at 544, and not contradicted by substantial evidence to the contrary.  *Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1308-09 (6th Cir. 1990); *see* C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

If the opinions of treating providers do not deserve controlling weight, the ALJ must determine what weight to give them by considering the following factors: the length, nature, and extent of the treatment relationship; the supportability of the physician's opinion and the opinion's consistency with the rest of the record; and the physician's specialization.  *Steagall v. Comm'r of*

*Soc. Sec.*, __ F. App'x__, 2015 WL 64654, at *2 (6th Cir. Jan. 6, 2015) (*citing Wilson*, 378 F.3d at

544). If the ALJ finds the treating physician's opinion fails to meet these conditions, she may

discredit that opinion, so long as she gives good reasons for doing so. 20 C.F.R. §§ 404.1527(c)(2),

416.927(c)(2); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). These

reasons must be "supported by the evidence in the case record, and must be sufficiently specific to

make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's

medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (*quoting* Soc. Sec. Rul.

No. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)).

### 1.     The ALJ did not err in her decision to give little weight to Dr. Shields's opinion

Plaintiff argues that the ALJ erred in failing to give good reasons for discounting the opinion

of Dr. Shields. (R. 11-1, at 8-9). The Court disagrees.

The ALJ explained:

> As to the opinion evidence, Dr. Shields completed an assessment in April 2013
> noting that due to Ms. Gallion's cardiac history and worsening joint pain that she
> would no longer be able to work at her past relevant work secondary to the physical
> exertion required. The examiner further opined that jobs that are more sedentary
> might be too difficult given the claimant's anxiety. Dr. Shields opined that the
> claimant's paranoia signified more underlying problems than just typical depression
> or anxiety (Exhibit 9F page 3).
>
> Dr. Shields found, on a physical assessment dated April 2013, that Ms. Gallion could
> work three hours a day in an eight hour day; stand/walk less than two hours in an
> eight hour day, sit three hours in an eight hour day; lift 10 pounds occasionally and
> eight pounds frequently; occasionally bend and stoop; never balance, climb ladders
> or stairs; and more than four days a month would be absent from work (Exhibit 13F).
> Several months later Dr. Shields completed another form stating that Ms. Gallion
> could work five hours in an eight hour day; stand/walk two hours in an eight hour
> day; sit three hours in an eight hour day; occasionally lift 10 pounds and frequently
> lift five pounds; occasionally use her right and left hands; occasionally bend and
> stoop; never balance or climb ladders; and occasionally climb stairs (Exhibit 15F).

> In this case, there is a lack of objective clinical or laboratory findings to support the degree of limitation that Dr. Shields reported. The medical record reveals no significant evidence of neurologic compromise, which would affect the claimant's ability to stand, walk, or sit to the degree as indicated. In addition, she does not relate her opinion to any specific findings; her opinion is not supported by records, which indicate very little or no continuing treatment or use of prescribed medication. Dr. Shield's assessment is inconsistent with the claimant's self-reported activities of daily living as well. The undersigned, therefore gives little weight to Dr. Shield's assessment of the claimants limitations.

(A.R. 27). The ALJ also noted in her decision that Plaintiff saw Dr. Shields in May 2010, and was prescribed Zoloft and Xanax, which Plaintiff reported having taken in the past with good results. (*Id.* at 23, 47-48, 356-57). The record does not demonstrate that Dr. Shields saw Plaintiff again until April 2013, an almost three year gap. (*Id.* at 23, 445-47). The ALJ noted that in April 2013, Ms. Gallion was complaining of worsening paranoia and agitation, but Dr. Shields noted a normal mood and effect. Dr. Shields again prescribed Zoloft in an attempt to manage her complaints conservatively. (*Id.* at 23-24, 447, 453-56).

The ALJ's findings are supported by the evidence in the record, and are sufficiently specific to make clear the weight she gave to Dr. Shields's medical opinion and the reasons for that weight. Specifically, the ALJ found that the restrictions Dr. Shields placed on Plaintiff were not well supported by the medical record, which did not reveal any significant evidence of neurologic compromise that would affect the claimant's ability to stand, walk, or sit to the degree as indicated.

In fact, Dr. Shields's own notes state that Plaintiff's cardiac history and worsening joint pain would render her unable to perform her current job, which the VE identified as requiring heavy exertion, but did not state her physical problems would limit her from more sedentary jobs. Instead, Dr. Shields opined that more sedentary jobs "may be too difficult given her anxiety." (*Id.* at 447). Yet, without explanation, Dr. Shields limited Plaintiff to two hours of standing/walking and three

hours of sitting in an eight-hour work day.[2]  (*Id.* at 462, 472).  The ALJ specifically noted that Dr. Shields's assessments did not reference any specific findings and were inconsistent with the fact Plaintiff had little to no continuing treatment.[3]  *See, e.g., Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) ("[An] ALJ 'is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.'" (*quoting King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)); *see also Osier v. Astrue*, 2:10-CV-00044, 2011 WL 2670578, at *19 (M.D. Tenn. July 8, 2011) (doubting the deference given "a physician's opinion provided for purposes of litigation by means of checking boxes and filling in blanks . . . where [] the physician did not even attempt to support his opinions with reference to the medical record or his own treatment notes").  Thus, the record does not support the degree of physical limitations Dr. Shields placed on Plaintiff's ability to perform work functions.

Further, the ALJ found Dr. Shields's assessments were inconsistent with Plaintiff's activities of daily living.  While Plaintiff's responses to the April 26, 2012, Pain and Daily Activities Questionnaire and Function Report indicate she has curtailed some of her activities of daily living, Plaintiff stated she always cooks heart-healthy foods for herself, she vacuums and does laundry

---

[2]For an unexplained reason, Dr. Shields provided two RFC assessments, dated four months apart. It does not appear from the record that Dr. Shields saw Plaintiff between the two assessments and she does not explain why she submitted a second assessment.  (A.R. 462, 472).

[3]The Commissioner argues Dr. Shields's opinion is not entitled to controlling weight because she only treated Plaintiff on two occasions over a three year period and thus does not qualify as a treating source. (*See* R. 12, at 9) (*citing* 20 C.F.R. § 404.1502).  In her Motion, Plaintiff states Dr. Shields treated Ms. Gallion on numerous occasions, but does not provide any citation to the record to treatment other than on May 21, 2010, and April 28, 2013.  (R. 11-1, at 5).  The Court notes, however, that Dr. Shields is listed as Plaintiff's primary care physician on hospital/urgent care/physician records.  (*See, e.g.,* A.R. 348, 380-83, 401, 414). The Court need not determine whether Dr. Shields is entitled to be classified as a treating source because even assuming she is a treating source, her extreme limitations are not supported by the record and thus the ALJ properly gave her opinion little weight.

9

weekly, grocery shops, drives a car, helps care for her two-year old grandchild, reads online newspapers, and handles her own finances. (A.R. 49-50, 260-73). Plaintiff also testified that when she was taking Zoloft it helped her anxiety and she was able to function. (*Id.* at 47-48). Thus, Plaintiff's statements of daily living do not evidence disabling limitations. To the extent Plaintiff testified at the evidentiary hearing to not doing any household chores and not taking care of her personal needs, the ALJ found these statements inconsistent with the medical evidence and stated "it would seem that the claimant's multiple complaints are based on her reluctance to perform any additional activities rather than a cause for her alleged restrictions." (*Id.* at 25-26, 50-51). Thus, the ALJ found her testimony not fully credible. (*Id.* at 25-27).

In sum, the lack of supporting medical evidence and inconsistency of Dr. Shields's RFC assessments with the record as a whole as well as Plaintiff's failure to seek continuing treatment provide substantial support for the ALJ's decision to not adopt Dr. Shields's opinion of extreme limitations. *See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 440 (6th Cir. 2010). The ALJ's proffered reasons for not according controlling weight to Dr. Shields's assessments satisfy the "good reason" requirement contained in 20 C.F.R. §§ 404.1527 and 416.927. *See Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804-05 (6th Cir. 2011) (finding ALJ's decision to give no weight to opinion of treating source not error where ALJ cited opinion's inconsistency with objective medical evidence, conservative treatment, daily activities, and assessment of other physicians). Accordingly, the ALJ's decision to give Dr. Shields's opinions little weight is supported by substantial evidence.

### B.   Non-Treating Physicians' Opinions

In determining what weight to give the opinion of a non-treating physician, the ALJ must apply the same factors considered for treating physicians' opinions, i.e., the opinion's supportability and consistency, and the physician's specialization.  *See Steagall*, 2015 WL 64654, at *3, (*citing Gayheart*, 710 F.3d at 379).  "The ALJ cannot apply greater scrutiny to the opinions of treating sources over those of non-treating sources." *Id*.

### 1.     The ALJ did not err in giving Dr. Green's opinion significant weight

Plaintiff argues the ALJ erred in giving the opinion of Dr. Green significant weight because Plaintiff finds Dr. Green's assessment both internally conflicting and inconsistent with the medical record evidence.  (R. 11-1, at 12-13).  The Social Security Act authorizes narrow judicial review of the final decision of the Commissioner.  "The Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence."  *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (*citing* 42 U.S.C. § 405(g)).  Thus, this Court can reverse the findings of an ALJ only if the findings are not supported by substantial evidence or the ALJ applied an incorrect legal standard.  *Id*. (*citing Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)).

Here, at the conclusion of the administrative hearing, the ALJ told Plaintiff she wanted to obtain a further consulting psychiatric examination because prior examinations did not support Plaintiff's testimony regarding the severity of her mental impairment.  (A.R. 59-60).  Accordingly, Plaintiff was referred to Dr. Green for a consulting examination.  (*Id.* at 474-81).  After examination, Dr. Green submitted a psychological evaluation stating:  Plaintiff reported moderate depressive symptoms but finding she:

> is capable of understanding, remembering, and carrying out instructions.  She would likely be capable of responding appropriately to supervision.  She reported mild

11

difficulty concentrating.  She may experience mild to moderate difficulty sustaining persistence and pace and of adapting to change from a mental health perspective, given persistent mood disturbance.

(*Id.* at 474-78).  In addition, Dr. Green completed a mental health RFC evaluation, finding Plaintiff had a mild restriction for interacting appropriately with the public and a mild restriction to responding appropriately to usual work situations and to changes in a routine setting.  (*Id.* at 479-80).  The ALJ gave Dr. Green's opinion significant weight, finding it consistent with the record as a whole and an accurate reflection of Plaintiff's true level of functioning.  (*Id.* at 29).

Plaintiff cites to Dr. Green's conclusion that she had a GAF score of 51 as being contradictory to her RFC findings of only mild impairments.  As discussed more fully in subsection 3 below, Global Assessment of Functioning ("GAF") scores are not dispositive of a claimant's level of functioning.  *Keeler v. Comm'r of Soc. Sec.*, 511 F. App'x 472, 474 (6th Cir. 2013); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006).

Here, Dr. Green provided sufficient findings to support her RFC assessment.  Dr. Green reported that Plaintiff told her that she did not return to work after her heart attack because she could no longer wear a respirator, and because of problems with her knees, feet, shoulders and back, but reported "she was generally capable of completing occupational tasks from a mental health perspective."  (A.R. 475).  Dr. Green noted that other than Plaintiff being irritable, having a depressed mood and being mildly impaired in her concentration, the mental status examination was unremarkable.  (*Id.* at 476).  Thus, Dr. Green's conclusions were supported by her examination.

Plaintiff appears to interpret Dr. Green's recitation of Plaintiff's self-reporting statements of limitations to be Dr. Green's assessment.  (R. 11-1, at 12).  However, Dr. Green's statements under "Clinical Assessment" simply recite Plaintiff's claims and do not represent Dr. Green's clinical

findings. Further, the ALJ considered Plaintiff's statements to Dr. Green, and found them not to be completely credible. (A.R. 24-25).

Nor, does Plaintiff's full Scale IQ score of 86 on the Wechsler Adult Intelligence Scale exam render Dr. Green's assessment internally inconsistent. As Dr. Green noted, a full scale IQ score of 86 indicates that Plaintiff's overall level of intellectual functioning is in the low average range. (*Id.* at 477). Dr. Green further found Plaintiff's memory was normal, she had adequate judgment and insight, average intelligence, normal speech, and unremarkable thought process and content. (*Id.* at 476). In addition, Plaintiff testified that she completed the twelfth grade, can read, write and do simple math, and was able to obtain a license for asbestos removal. (*Id.* at 43-44). She also maintains a drivers license. (*Id.* at 44).

Further, based in part on Dr. Green's opinion, the ALJ limited Plaintiff to jobs that require she understand and remember simple and some detailed instructions and procedures, and provides that she can sustain attention, concentration and pace for simple task completion within regular tolerances, can interact adequately with peers and supervisors for task completion and on an at least occasional basis with the public; and she can adapt adequately to work demands and situational changes given reasonable support. (*Id.* at 20). Plaintiff has not pointed to any evidence to demonstrate her low average intellectual functioning requires more restrictions than this RFC provides.

As explained above, the Court does not resolve conflicts in the evidence or assess questions of credibility. *See Howard v. Colvin*, No. 5:13-cv-304-REW, 2015 WL 859290, at *6 (E.D. Ky. Feb. 27, 2015) (*citing Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). Instead, the Court engages in a review of the ALJ's findings to determine if substantial evidence supports her factual

conclusions. *Id*. If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would also support the opposite conclusion. *Id*. at *3 (*citing Warner*, 375 F.3d at 390). Here, as explained above, the ALJ's decision to give Dr. Green's opinion significant weight was supported by substantial evidence.

### 2. The ALJ did not err in her decision to give great weight to the opinions of non-examining reviewers

Plaintiff argues the ALJ erred in her assessment of the opinions of non-examining reviewers. Specifically, Plaintiff argues that the ALJ erred in giving great weight to the opinions of state agency psychologist Dr. Thompson and state agency physician Dr. Lange because they did not have the opportunity to review treating physician Shields's RFC determinations.

The Sixth Circuit has rejected the argument that an ALJ errs in considering a state agency opinion that was provided early in the administrative process and thus did not account for later assessments where the ALJ's decision demonstrates the ALJ considered the later records. *See McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009); *see also Thomas v. Colvin*, No. 0:14- cv-129-JMH, 2015 WL 1281701, at *5 (E.D. Ky. Mar. 20, 2015); *Ward v. Astrue*, No. 09-212-ART, 2010 WL 4000247, at *5 (E.D. Ky. Oct. 12, 2010). While Plaintiff argues Drs. Lange and Thompson did not consider Dr. Shields's assessment, Plaintiff does not argue that the ALJ failed to consider evidence previously unavailable to these state agency doctors. Even if Plaintiff had made such an argument, it would fail as the ALJ's decision demonstrates that she considered the entire record, including the medical records provided after the state agency doctors' reports, before making her final decision.

Here, Dr. Lange provided her physical assessment on October 15, 2012, and Dr. Thompson provided her mental assessment on October 14, 2012. (A.R. 109-14). The ALJ thoroughly reviewed

14

the record, including Dr. Shields's April 2013 examination and subsequent RFC evaluations.  (*Id.* at 23).  The ALJ determined that Dr. Shields's opinion of severe limitations lacked objective clinical or laboratory support, did not reference any specific findings, and was inconsistent with Plaintiff's lack of treatment and her self-reported activities of daily living.  (A.R. 27).  Further, the ALJ did not rely on the state agency decisions exclusively, but discussed the record evidence as a whole in formulating the RFC.  (A.R. 28-29).  Since the ALJ's decision demonstrates that she considered the evidence unavailable to Drs. Lange and Thompson, the ALJ did not err in relying, in part, on their reports.  *McGrew*, 343 F. App'x at 32; *Belew v. Astrue*, No. 2:11-107-DCR, 2012 WL 3027114, at *7 (E.D. Ky. July 24, 2012) (as long as the non-treating source's opinion is supported by evidence of record, the ALJ may accord it greater weight than the discounted opinion of a treating doctor).

In support of her argument, Plaintiff cites *Walker v. Secretary of Health & Human Services*, 980 F.2d 1066, 1071-72 (6th Cir. 1992), and *Jones v. Astrue*, 808 F. Supp. 2d 992 (E.D. Ky. 2011).  These cases, however, are distinguishable.  In *Walker*, the Sixth Circuit reversed the decision of the ALJ because the ALJ considered each of the claimant's impairments separately and the medical evidence of record indicated that the combined effect of the claimant's impairments warranted a finding of disability.  *Walker*, 980 F.2d at 1071.  The Sixth Circuit noted *in dicta* that it would not give dispositive weight to a report of a non-examining physician who did not explain why he disagreed with the opinion of a treating physician.  *Walker* did not involve the issue raised here of whether the ALJ considered medical records submitted after a reviewing doctor's assessment.  Further, the ALJ here did not give the non-examining doctors' opinions "dispositive" weight, but great weight after finding them consistent with the record as a whole.

15

Moreover, the Sixth Circuit has explained that as long as the non-treating source's opinion is supported by evidence of record, the ALJ may accord it greater weight than the discounted opinion of a treating doctor. *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011). In *Jones*, the court found the ALJ erred in discrediting the opinion of the treating doctor as inconsistent with the medical record where the court found evidence contained in the record supported the treating physician's opinion. The court then turned to the opinions of the non-treating sources and noted they considered only the medical evidence through 2007, the date of their opinions, and did not consider the medical record from 2008 and 2009. The *Jones* court found the ALJ should have sought advice from an advisor who had reviewed the complete record.

The present case, however, does not present a situation similar to that in *Jones* where the non-examining source was without a significant portion of the record. In addition, the ALJ's decision here demonstrates she considered the record evidence submitted after Drs. Lange's and Thompson's opinions were issued before rendering her final decision. *See McGrew*, 343 F. App'x at 32. Moreover, as noted above, the ALJ properly accorded Dr. Shields's opinion little weight based on a lack of any evidence substantiating the degree of limitation. Having given good reasons for giving little weight to Dr. Shields's opinion, the ALJ was entitled to rely on the opinions of state agency physicians whose opinions were consistent with the objective medical evidence of record. *Patrick v. Colvin*, No. 101-EBA, 2015 WL 202177, at *5 (E.D. Ky. Jan. 14, 2015).

**3.    The ALJ did not err in giving little weight to the opinions of Drs. Ford and Sprague**

Plaintiff argues that the ALJ erred in giving little weight to the opinions of two examining consulting psychologists, Drs. Ford and Sprague. The ALJ, however, considered these opinions, but gave them little weight because Plaintiff was not taking Zoloft as prescribed at the time of Dr.

16

Sprague's consultation, and she had not been compliant with her counseling sessions at the time of

Dr. Ford's consultation.  (A.R. 29).  Specifically, the ALJ explained:

> It is not surprising that the limits set by Dr. Ford and Dr. Sprague are significant (exhibits 4F and 14F).  The claimant has repeatedly admitted to failing to take her Zoloft and attend counseling.  While these evaluations found significant impairment, they do not reveal where the claimant could be if she were complaint to her recommended course of treatment.  This does not mean that the claimant has not worsened when she fails to adhere to her treatment plan.  However, the undersigned notes, by her own admission, that her symptoms are well controlled when she takes Zoloft (Exhibits 2F, 9F and 11F).  As such, the undersigned gives these opinions little weight.

(*Id.* at 29).

The ALJ also noted further inconsistencies surrounding Plaintiff's claims regarding the

severity of her mental health issues.  Specifically, the ALJ stated:

> Regarding [t]he mental health issues, the claimant has stated on several occasions that she has taken Zoloft off and on over the years, which did help relieve her symptoms (Exhibit 9F page 3).  However, she told an examiner in 2010 that she had stopped taking Xanax and Zoloft due to the cost (Exhibit 2F page 4).  During this same exam, however, she admitted to smoking cigarettes each day and drinking 12 to 14 cans of Mountain Dew a day (Exhibit 2F).  Surely, if the claimant had the money to buy cigarettes and soda in this quantity she would have been able to purchase medication that she knows will improve her mental health condition.  As noted above, during an exam at Pathways in May 2013, Ms. Gallion revealed that her treating doctor had recently prescribed Zoloft, which made her feel "better."  In addition, she stated that she should never have stopped taking the medication (Exhibit 12F).

> During an exam with Dr. Ford, in August 2013, Ms. Gallion told the examiner that she had not been back to counseling at Pathways because she did not like to leave her home (Exhibit 14F).  However, during an exam a few months later she stated that she was able to get out to family functions but would not stay long (Exhibit 16F page 2).  Surely, were she able to get out to social activities with family members she would have been able to attend mental health treatment that she has repeatedly admitted has helped in the past.

> The undersigned also noted that during an exam with Dr. Green, Psy. D., in October 2013, Ms. Gallion stated that she had not been able to go back to work after the heart attack because she could not wear a respirator anymore.  She also said she had

17

problems with her knees, feet, shoulders and back; however, she said that she had been "generally capable of completing occupational tasks from a mental health perspective" (Exhibit 16F page 3).

As noted above, by the claimant's own admission, her mental health issues are generally controlled when she is compliant with the recommended course of treatment.  As such, the undersigned finds the claimant's statements concerning her impairments and their impact on her ability to work inconsistent with her activities of daily living, the clinical findings and course of treatment and therefore not entirely credible.

(*Id.* at 26-27).  Thus, the ALJ discounted these opinions, as well as Plaintiff's complaints regarding the severity of her mental limitations, as being inconsistent with Plaintiff's own admission that when she is compliant with the recommended treatment, her symptoms were controlled to the extent she could work.  (*Id.* at 29, 48-49).

In addition, Plaintiff places a great deal of weight on the fact Drs. Ford, Sprague, and Green all opined that she has GAF score in the fifties, which evidences moderate symptoms and moderate difficulty in social, occupational, or school functioning.  (R. 11-1, at 14).  "The GAF score is a subjective determination that represents 'the clinician's judgment of the individual's overall level of functioning.'"  *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415 (6th Cir. 2006) (quotation marks and citation omitted).  "A GAF score may help an ALJ assess mental RFC, but it is not raw medical data.  Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning."  *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007) (citation omitted).  While Plaintiff asserts that a person with these GAF scores has moderate symptoms or moderate difficulty in social, occupational, or school functioning, she fails to explain the materiality of these GAF assessments.  A GAF score in the moderate range, without more, does not establish that a claimant is disabled.  *Keeler*, 511 F. App'x at 474; *Kornecky*, 167 F. App'x at 511.  In fact, the Sixth Circuit has

previously held that a GAF score as low as 50 is consistent with the ability to work. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007) (GAF in high 40s to mid 50s do not preclude finding claimant has mental capacity to hold at least some jobs in the national economy); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462 (6th Cir. 2006) (GAF of 50 not disabling); *see also Kornecky*, 167 F. App'x at 511 ("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place. . . . If other substantial evidence (such as the extent of the claimant's daily activities) supports the conclusion that she is not disabled, the court may not disturb the denial of benefits to a claimant whose GAF score is as low as Kornecky's [40-45, 46, 52, 50-55] or even lower."). Thus, a GAF score is not determinative of a finding of disability or an ALJ's ultimate finding of a claimant's RFC.

Here, while noting the GAF scores, the ALJ ultimately found the evidence supported a finding of mental limitations as set forth in the RFC above. The ALJ properly explained in her decision her reasoning for giving little weight to the opinions of Drs. Sprague and Ford because they did not consider the effect compliance with treatment would have on claimant's ability to function and thus were inconsistent with Plaintiff's admissions that her symptoms are at least somewhat controlled with medication. Plaintiff's citation to *Lashley v. Secretary of Health & Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983), is not applicable to Drs. Sprague and Ford's opinions as they were not treating doctors and the ALJ provided good reasons for discounting their opinions; specifically, they did not consider what effect compliance with treatment would have on Plaintiff's condition.

4.    **The ALJ was not required to include in her RFC findings the limitations contained in Dr. Thompson's response to questions on the assessment form despite the fact the ALJ gave the opinion great weight**

19

Plaintiff argues that while the ALJ gave great weight to the opinion of non-examining state psychologist Dr. Thompson, she failed to include all the limitations that Dr. Thompson included in her RFC assessment.  (R. 11-1, at 10-11).  Specifically, Plaintiff contends the ALJ failed to include in the hypothetical questioning Dr. Thompson's finding that Plaintiff "is moderately limited in the ability to perform activities within a schedule, maintain regular attendance, and to be punctual within customary tolerances ." (R. 11-1, at 11).  Plaintiff argues the ALJ's failure to include this limitation in the RFC resulted in the VE's responses to the hypothetical questioning to be unreliable since the questions did not accurately portray the Plaintiff's limitations.

A hypothetical question is adequate if it accurately portrays a claimant's abilities and limitations and is supported by the medical evidence.  *See Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 865 (6th Cir. 2011); *Webb*, 368 F.3d at 633; *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  A statement of the claimant's abilities and limitations, however, need not include an enumeration of every diagnosis of impairment.  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).  Instead, an ALJ need only include those restrictions which she has deemed credible.  *Parks*, 413 F. App'x at 865; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994).

Plaintiff maintains the ALJ should have included in the hypothetical questioning Dr. Thompson's opinion that Plaintiff "is moderately limited in the ability to perform activities within a schedule, maintain regular attendance, and to be punctual within customary tolerances ." (R. 11-1, at 10-11).  However, as the Commissioner notes, Dr. Thompson's responses to the questionnaire are not part of the RFC assessment. (A.R. 128-29).  In fact, Dr. Thompson's Mental Residual Functional Capacity Assessment contains the following statement above a list of questions: "[t]he questions

below help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s) in the explanation text boxes." (*Id.* at 128). Therefore, the ALJ was not required to include in her hypothetical questions to the VE a limitation Dr. Thompson set forth in answer to a question on the assessment, but did not include in her narrative opinion of Plaintiff's mental RFC. *See Griffith v. Comm'r of Soc. Sec.,* No. 13-6570, 2014 WL 3882671, at *7 (6th Cir. Aug. 7, 2014); *Chesser v. Comm'r of Soc. Sec.,* 2:13-cv-717, 2014 WL 3818573, at *9 (S.D. Ohio Aug. 4, 2014) (answers to "questions" section in mental RFC Assessment not part of doctor's opinion of claimant's mental RFC); *Shepard v. Colvin,* 2013 WL 2179366, at *11 (S.D. Ohio May 20, 2013) (citing number of cases concluding evaluator's responses to questions in Section I of mental RFC assessment form not required to be included in evaluator's RFC assessment).

Plaintiff's reliance on *Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504 (6th Cir. 2010), is misplaced. *Ealy* did not address the issue of whether an ALJ must include in the hypothetical question to a VE not only an evaluator's findings of a claimant's RFC assessment, but also the answers to questions in Section I of the evaluation form. Thus, *Ealy* is not applicable to the issue at hand.

Here, a review of the ALJ's hypothetical questioning reveals the ALJ incorporated into the hypothetical questions to the VE all of the limitations Dr. Thompson set forth in her narrative description of Plaintiff's mental RFC. (*See* R. 63-65, 129-30). Accordingly, contrary to Plaintiff's claim, the ALJ did not err in posing her hypothetical questions to the VE.

## IV.     CONCLUSION AND RECOMMENDATION

As explained above, the ALJ's decision is supported by substantial evidence and should be affirmed.  Accordingly, **IT IS RECOMMENDED** that:

1.     The Commissioner's decision be found to be supported by substantial evidence and therefore **affirmed**;

2.     Plaintiff's Motion for Summary Judgment (R. 11) be **denied**;

3.     Defendant's Motion for Summary Judgment (R. 12) be **granted**; and,

4.     Judgment be entered and this matter be **stricken** from the active docket of the Court.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service or further appeal is waived.  28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985).  A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

Dated this 14th day of April, 2015.



**Signed By:**

**_Candace J. Smith_**

**United States Magistrate Judge**

G:\DATA\social security\14-81 Gallion R&R-vlc.wpd